IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE LAW OFFICES OF JOSEPH Q. MIRARCHI LEGAL SERVICES, P.C., SILVER LEGAL SERVICES, P.C., <br> Plaintiffs, <br><br> v. <br><br> DALE THORPE, RENEE THORPE h/w, HERBERT MCDUFFY, JR., ROGER ASHODIAN, BB&T CORPORATION, LITITZ PROPERTIES, LLC AND JOHN FIORILLO, <br> Defendants. | CIVIL ACTION <br><br><br><br> NO. 16-6604 |

## MEMORANDUM OPINION

This case is one portion of attorney Joseph Q. Mirarchi's multi-forum attempt to recover a contingency fee from bankrupt clients Renee and Dale Thorpe, who terminated him after learning of his undisclosed administrative suspension from the practice of law. The Court has already considered – and rejected – The Law Offices of Joseph Q. Mirarchi's ("Mirarchi") entitlement to the fees in a separate matter originating in the Thorpes' Chapter 12 bankruptcy case. This case was filed before the Court issued its opinion in that matter. Here, Mirarchi's solo legal practice proceeds alongside co-Plaintiff Silver Legal Services in attempting to recover the fees not only from the Thorpes, but also from the attorney they hired to complete Mirarchi's work (Herbert McDuffy, Jr.), the Thorpes' bankruptcy attorney (Roger Ashodian), the Thorpes' primary debtors (BB&T Corporation and Lititz Properties, LLC), and the attorney for those debtors (John Fiorillo). Plaintiffs assert thirteen state-law claims and allege a wide-ranging

conspiracy to deny Plaintiffs their fees. All Defendants other than McDuffy have filed motions to dismiss. Those motions shall be granted.

## I. BACKGROUND

The core of this case is straightforward: Plaintiffs seek to recover legal fees arising from a contingency fee arrangement concerning the representation by Mirarchi of the Thorpes in a dispute with their property insurer, Nationwide Mutual Insurance Company ("Nationwide"). Complicating matters, however, Renee Thorpe was in the midst of a Chapter 12 bankruptcy proceeding at the time, and the dispute over Mirarchi's legal fees became intertwined with the settlement of the bankruptcy. After other parties to the bankruptcy refused to allocate a portion of the settlement to Mirarchi, the funds were placed in escrow, and Mirarchi filed a motion seeking disbursement of the funds to his solo legal practice.

The Bankruptcy Court denied Mirarchi's motion and issued Proposed Findings of Facts and Law that were adopted by this Court after *de novo* review. In adopting those findings, the Court ruled that Mirarchi was terminated for unlawful activity (*i.e.*, the unauthorized practice of law and the failure to disclose his suspension to clients) and was thus not entitled to the disputed legal fees. *See U.S. Trustee v. Thorpe*, No. 17-cv-857, 2017 WL 3084388, at *4 (E.D. Pa. July 19, 2017). That ruling is now on appeal in the Third Circuit. Nevertheless, Mirarchi continues to press its claims here alongside co-Plaintiff Silver Legal Services, a firm which was not a party to the agreement between Mirarchi and the Thorpes.[1]

---

[1] Although the Complaint does not clearly set forth Silver Legal Services' relationship to this dispute, Plaintiffs conceded at oral argument that Silver Legal Services is not a party to the agreement between Mirarchi and the Thorpes. Oral Arg. Tr. at 26, Aug. 24, 2017.

### A. Nationwide Insurance Settlement

Herbert McDuffy, Jr., one of the lawyers who represented the Thorpes, referred them to Joseph Mirarchi to take over from him a case they were litigating against Nationwide. Mirarchi sent them a proposed contingency fee agreement but started work on the case – filing an Amended Complaint – before they signed it. Although the Thorpes did, eventually sign the agreement (the "Fee Agreement"), they did so in March 2015, several months after he began work on the matter. Compl. ¶ 80, 81, 94.

There was little activity on the case until August 25, 2015, when Joseph Mirarchi entered into informal settlement negotiations with Nationwide's counsel. Compl. ¶¶ 105-06. Nationwide soon proposed a settlement offer of $324,000, and Joseph Mirarchi attempted, by phone and by text message, to relay this offer to the Thorpes and obtain consent to accept the offer. Compl. ¶¶ 107-08. He also attempted to contact Roger Ashodian, Renee Thorpe's bankruptcy counsel. Compl. ¶ 108.

In response to these inquiries, Ashodian's office requested a copy of both the Fee Agreement and Joseph Mirarchi's resume. Compl. ¶ 112. Ashodian also contacted Gary Silver, an attorney with Plaintiff Silver Legal Services, to request a copy of the Amended Complaint previously filed by Mirarchi.[2] Compl. ¶¶ 117-18. Ashodian's assistant then prepared an application for *nunc pro tunc* approval of Mirarchi as special litigation counsel in Renee Thorpe's bankruptcy case, which was sent to Mirarchi with the disclaimer: "Roger Ashodian has

---

[2] The relationship between Mirarchi and Silver Legal Services is not described in the Complaint.

3

decided for strategic reasons not to file the application yet, but he would like everything in place to file it soon." Compl. ¶¶ 122, 124.

Despite numerous attempts by Joseph Mirarchi to elicit consent throughout the fall of 2015, the Thorpes did not agree to accept the Nationwide settlement. Instead, after learning that he had been administratively suspended from the practice of law from August 14, 2015 to September 16, 2015 (*i.e.*, during most of his negotiations with Nationwide),[3] the Thorpes terminated Mirarchi's representation by e-mail dated November 23, 2015, following up on December 31 with a signed termination letter. Compl. ¶¶ 126-34, 150-63, 171, 175. On January 27, 2016, McDuffy (who was then also representing two creditors in the Thorpe bankruptcy matter) re-entered his appearance in the Nationwide case and accepted the settlement offer primarily negotiated by Joseph Mirarchi. Compl. ¶ 207.

B. **The Fee Dispute in Bankruptcy Court**

While Joseph Mirarchi was attempting to obtain the Thorpes' consent to the Nationwide settlement, the Thorpes' family farm was sold at auction on September 15, 2015 pursuant to their bankruptcy plan. Compl. ¶ 135. The proceeds from the auction were not enough to cover the Thorpes' debts, and the Bankruptcy Court referred the matter to mediation before the Honorable Ashely M. Chan. Compl. ¶ 177. At the first mediation conference in early January 2016 (prior to the Thorpes' acceptance of the Nationwide settlement), Renee Thorpe, Ashodian, McDuffy (on behalf of two creditors), and John Fiorillo (on behalf of creditors Lititz Properties, LLC ("Lititz") and BB&T Corporation ("BB&T")) agreed to a global settlement by which Fiorillo,

---

[3] Although the fact of Mirarchi's suspension is omitted from the Complaint, Plaintiffs conceded at oral argument that Mirarchi was, in fact, administratively suspended from the practice of law from August 14, 2015 until September 16, 2015. Oral Arg. Tr. at 28-29, Aug. 24, 2017.

4

Lititz, and BB&T would receive $220,000 and discharge the remainder of Renee Thorpe's financial liabilities. Compl. ¶¶ 179-82, 184-85.

The Bankruptcy Court scheduled a second mediation conference for March 10, 2016 and Joseph Mirarchi sought leave to attend on behalf of Mirarchi. Compl. ¶¶ 214, 217. During the conference, all of the named Defendants in this case maintained that the Thorpes had never retained Mirarchi and that, accordingly, it was not entitled to a 35% contingency fee. Compl. ¶¶ 225-26. On April 19, Fiorillo, Lititz, and BB&T filed a motion to approve a settlement between all named Defendants. Compl. ¶ 230. The Bankruptcy Court granted the motion and ordered that Mirarchi's attorney's lien, totaling $113,400 (the "Disputed Fees"), be placed in escrow with the Clerk of the Court, and the balance of the Nationwide settlement, $210,600, be paid the Fiorillo, Lititz, and BB&T immediately. Compl. ¶ 234.

On June 22, 2016, Mirarchi filed a motion with the Bankruptcy Court seeking payment of the Disputed Fees (the "Mirarchi motion"), alleging that it was owed the fees under the Fee Agreement or, in the alternative, under the equitable doctrine of *quantum meruit*. That motion was considered by the Bankruptcy Court during a three-day hearing, after which the Bankruptcy Court determined that the fee dispute was a non-core matter that it could not resolve without the parties' consent, and therefore issued proposed findings of fact and law which were submitted to this Court for *de novo* consideration. *See In re Thorpe*, 563 B.R. 576 (Bankr. E.D. Pa. 2017). On July 19, 2017, this Court issued its final order adopting the Bankruptcy Court's findings and holding that Mirarchi did not have a contractual or equitable entitlement to the disputed funds because the Thorpe's terminated the representation for Joseph Mirarchi's unlawful conduct (*i.e.*, the unauthorized practice of law). *See U.S. Trustee*, 2017 WL 3084388, at *4. Two days later, Mirarchi appealed that decision to the Third Circuit.

### C. This Case

While the Mirarchi motion was pending before the Bankruptcy Court, Mirarchi, joined by Plaintiff Silver Legal Services, filed this case alleging a breach of contract, detrimental reliance, and unjust enrichment against the Thorpes (Counts I, II, and III); conversion, civil conspiracy, and abuse of process against all seven Defendants (Counts IV, VII, and XIII); intentional and negligent misrepresentation against the Thorpes, McDuffy, and Ashodian (Counts V and VI); quasi-contract and unjust enrichment against BB&T (Count VIII); and intentional and negligent interference with contractual relations against McDuffy, Ashodian, BB&T, Lititz, and Fiorillo (Counts IX, X, XI, and XII).

## II. LEGAL STANDARD

Defendants have filed motions to dismiss under both Rule 12(b)(1) and 12(b)(6). In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "a court must first determine whether the movant presents a facial or factual attack." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action Litig.*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "contests the sufficiency of the pleadings," and the court is limited to considering only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). A factual attack, on the other hand, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal quotation marks and modifications omitted). When considering a factual attack, "a court may weigh and consider evidence outside the pleadings." *Id.* (internal quotation marks omitted). In this case, Defendants have relied on the pleadings in challenging the Court's subject-matter jurisdiction, and Defendants motion under Rule 12(b)(1) shall therefore be

evaluated based on the allegations in the Amended Complaint and documents referenced therein and attached thereto.

Just as when considering a facial attack to subject-matter jurisdiction under Rule 12(b)(1), a court considering a motion to dismiss under Rule 12(b)(6) must construe the facts and draw all reasonable inferences in the light most favorable to the plaintiff. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (internal quotation marks and brackets omitted). A plaintiff need not show that success on his or her claims is probable, but must assert "'enough facts to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element in a claim. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)). However, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks and citations omitted).

## III.     DISCUSSION

Six of the seven defendants – all except McDuffy – have filed motions to dismiss Plaintiffs' Complaint. All of the motions argue that Plaintiffs have failed to state a claim. Defendant Fiorillo adds an argument that the Court lacks of subject-matter jurisdiction. Defendants Ashodian and the Thorpes do not challenge subject-matter jurisdiction, but argue that the claims against the Thorpes violate the automatic stay of litigation against a bankruptcy debtor and co-debtor. *See* 11 U.S.C. §§ 362(a), 120.

### A.     Subject-Matter Jurisdiction

Plaintiffs contend that this Court has subject-matter jurisdiction in this case pursuant to 28 U.S.C. § 1334(b) in that it is a proceeding "related to" federal bankruptcy law. A matter is "related to" a bankruptcy case, and thus within the jurisdiction of the federal courts, if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Though the confirmation of a bankruptcy plan – which has already occurred with respect to the Thorpes' bankruptcy – revests all of the estate's property back in the debtor, *see* 11 U.S.C. § 1141(b), district courts have "related to" jurisdiction over post-confirmation claims that exhibit "a close nexus to the bankruptcy plan or proceeding." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166 (3d Cir. 2004). Whether a case is "related to" a bankruptcy is determined by reference to the state of affairs at the time the case was filed. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012); *see also In re SemCrude, L.P.*, 864 F.3d 280, 289 (3d Cir. 2017) ("Related-to jurisdiction – like other type of federal jurisdiction – is determined at the time of filing.").

At the time this case was filed, the legal dispute over Mirarchi's claim to a contingency fee remained unresolved and winning a judgment in this case prior to the resolution of the Mirarchi motion would have given Mirarchi a legal entitlement to the funds carved out of Renee Thorpe's bankruptcy settlement. That would have impacted the amount of funds available to both the debtor and her creditors under the settlement approved by the Bankruptcy Court. Therefore, based on the state of affairs at the time this case was filed, Plaintiffs' claims were "related to" the Thorpe bankruptcy and fall under this Court's "related to" subject-matter jurisdiction under 28 U.S.C. § 1334(b). Fiorillo's motion to dismiss for lack of subject-matter jurisdiction must be denied.

      **B.**      **Automatic Bankruptcy Stay**

As another threshold matter, Defendants Thorpe and Ashodian argue that Plaintiffs' claims against them are barred by the automatic stay provisions of the Bankruptcy Code. *See* 11 U.S.C. § 362. The bankruptcy stay "operates to stay the commencement or continuation of any 'action or proceeding' that was or could have been commenced against the debtor." *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010) (quoting 11 U.S.C. § 362(a)). While the provision offers a debtor some respite from legal action, "[i]t is applicable, however, only to stay a claim that arose pre-petition." *Id.* Accordingly, in cases where a plaintiff has a claim against a debtor that arose after the filing of the bankruptcy petition, and could not have been brought pre-petition, the automatic stay will not protect the defendant from suit. *Id.*

In this case, Renee Thorpe filed for bankruptcy prior to Mirarchi's involvement in the Nationwide case, so all of the events giving rise to Plaintiffs' claims occurred after the bankruptcy petition was filed. Plaintiffs' claims therefore arose post-petition and are not barred by the automatic stay. The Thorpes and Ashodian's motion to dismiss the claims against them as

9

barred by the automatic and co-debtors bankruptcy stays is denied.

### C. Failure to State a Claim

Defendants' argument that Plaintiffs have failed to state a claim rests primarily on the contention that Plaintiffs are not entitled to any part of the contingency fee. This issue was raised by the Mirarchi motion, which this Court denied after a *de novo* review of the Bankruptcy Court's ruling, and at least one Defendant – BB&T – has argued that the Court's final order in that case forecloses Plaintiffs' claims in this case.[4]

The preclusive effect of a final order can take two forms: claim preclusion (*i.e. res judicata*), and issue preclusion (*i.e.*, collateral estoppel). *See Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007). Claim preclusion operates to bar the re-litigation of the same claims that were pressed in a prior matter and arises from: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Claim preclusion extends to "not only claims that were brought in a previous action, but also claims that could have been brought." *Id*. Thus, in determining whether the claims brought in a given suit are based on the same "cause of action" as claims already resolved in another case, courts must take a "broad view, looking to whether there is an essential similarity of the underlying events giving rise to the various legal claims." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (internal quotation marks omitted).

Issue preclusion, on the other hand, "prevents parties from relitigating an issue that has already been actually litigated," and may be invoked when: "(1) the issue sought to be precluded

---

[4] Although BB&T did not style its argument "preclusion," the substance of the argument – that the Court's prior ruling resolved issues raised by the current case – falls under the legal rubrics of claim and issue preclusion and will be analyzed as such.

is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Peloro*, 488 F.3d at 174-75. To invoke issue preclusion, "[c]omplete identity of parties in the two suits is not required," as long as the party against whom the preclusion is invoked has had a full and fair opportunity to litigate the issue in question. *Burlington Northern R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995).

### 1. Mirarchi's Claims

Through the Mirarchi motion, Mirarchi has already litigated its claim to attorneys' fees arising from its representation of the Thorpes against Nationwide. *See U.S. Trustee v. Thorpe*, No. 17-cv-857, 2017 WL 3084388 (E.D. Pa. July 19, 2017). In resolving the Mirarchi motion case, this Court considered Mirarchi's claims to recover the fees based on both breach of contract and unjust enrichment theories, and held that the firm had no legal or equitable right to these funds. In light of the final order denying the Mirarchi motion, Mirarchi is precluded from bringing claims that arise from the withholding of a contingency fee for Mirarchi's work on the Nationwide settlement.[5]

---

[5] Plaintiffs argue that the Court's final order in *Thorpe* does not have preclusive effect because it has been appealed. However, it is well-established that a "judgment's preclusive effect is generally immediate, notwithstanding any appeal." *Coleman v. Tollefson*, 135 S. Ct. 1759, 1764 (2015); *see Cohen v. Superior Oil Corp.*, 90 F.2d 810, 811 (3d Cir. 1937) (holding that the preclusive effect of a final judgment becomes effective immediately, and "it is only when reversed on appeal that such a judgment loses it efficacy"). Plaintiffs' argument that an appeal requiring *de novo* review of the district court's legal conclusions prevents an order from having preclusive effect is misplaced. The exception Plaintiffs appear to invoke applies only in the "virtually nonexistent situation in which the 'appeal' actually involves a full trial *de novo*." 18A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4433 (2d ed.) (2017). As Plaintiffs have acknowledged in post-argument letter briefing, the appeal of the Court's order in *U.S. Trustee v. Thorpe* pending before the Third Circuit does not entail a full trial *de novo* with additional fact-finding. The appeal therefore does not disturb the preclusive effect of the Court's order in that case.

11

The resolution of the Mirarchi motion also precludes re-litigation of the *issue* of Mirarchi's legal and equitable rights to payment of a contingency fee arising from the Nationwide litigation and settlement. Plaintiffs fully litigated the matter in the Bankruptcy Court and in this Court. The only issue presented in that case was Mirarchi's right to the contingency fee, and that issue was expressly addressed – under both legal and equitable theories – by the Court in its opinion accompanying the denial of that motion. The order denying the motion thus rendered a final judgment from a Court of competent jurisdiction, and Mirarchi is precluded from arguing that it is entitled to the contingency fee under either a contractual or equitable basis in this case.

With the preclusive effect of the final judgment regarding the Mirarchi motion in mind, the claims in this case can be divided into three types: (1) claims which directly seek payment of the disputed Nationwide contingency fee; (2) claims which seek compensation for interference with the Mirarchi-Thorpe relationship; and (3) broader claims of unjust enrichment.

### a.  Claims Seeking the Nationwide Contingency Fee

Mirarchi seeks payment of the Nationwide litigation contingency fee under several theories: breach of contract (Count I), detrimental reliance (Count II), unjust enrichment (Count III),[6] conversion (Count IV), intentional misrepresentation (Count V), negligent misrepresentation (Count VI), and civil conspiracy (Count VII). Plaintiffs proceed against the Thorpes on all of these claims; against McDuffy and Ashodian on all but the contract, detrimental reliance, and unjust enrichment claims; and against BB&T, Lititz, and Fiorillo on the unjust enrichment and conversion claims.

---

[6] Plaintiffs contend that their unjust enrichment claim in this case includes not only the fee itself, but also the benefits that accrued to all Defendants as a result of the Nationwide settlement. To the extent that this claim is broader than the claim raised by the Mirarchi motion, it is discussed in a separate section below.

Mirarchi is precluded from bringing any of these claims against the Thorpes. The Mirarchi motion asserted a legal claim against the Thorpes for payment of the Nationwide contingency fee, and that claim was rejected in the Court's final judgment. Since a final judgment precludes "not only claims that were brought in a previous action, but also claims that could have been brought," *In re Mullarkey*, 536 F.3d at 225, Mirarchi cannot proceed with another suit claiming a right to the Nationwide contingency fee. That fact the claims in this case include distinct legal theories does not take the claims outside the preclusive effect of the final order denying the Mirarchi motion. *See CoreStates Bank*, 176 F.3d at 194 ("[C]laim preclusion (or *res judicata* as it is also called) gives dispositive effect to a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding.") (internal quotation marks omitted). Counts I through VII and XIII against the Thorpes are therefore precluded and the Thorpes' motion to dismiss shall be granted.

Although the claims against Ashodian, BB&T, Lititz, and Fiorillo are not claim-precluded by the ruling on the Mirarchi motion, they cannot survive the issue-preclusive effect of that case because the claims would require Mirarchi to show that it is entitled to a fee or equitable compensation for its work on the Nationwide litigation. As noted above, that issue was fully litigated through the Mirarchi motion, was essential to the resolution of that case, and was determined by a final and valid judgment. Since Mirarchi's claims to recover the Nationwide contingency fees from Defendants other than the Thorpes depend on an argument that is precluded in this case, those Defendants' motions to dismiss Counts I, II, III, IV, V, VI, VII and XIII shall be granted.

### b. Claims of Interference with the Contingency Fee

In addition to the claims claiming a right to payment of the contingency fee directly from the Thorpes and other Defendants, Plaintiffs have brought claims alleging that McDuffy, Ashodian, BB&T, Lititz, and Fiorillo either intentionally or negligently interfered with Mirarchi's contract with the Thorpes (Counts XI, X, XI, XII) or that all Defendants committed a common law abuse of process by excluding Plaintiffs from the bankruptcy settlement (Count XIII). While negligent interference with contractual relations is not recognized as a claim in Pennsylvania, *see Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998), Pennsylvania law does include a cause of action for intentional interference with contractual relations when a plaintiff can show the existence of a contract between the plaintiff and a third party, and the defendant's intentional interference with that contract causes "actual damage." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979). Pennsylvania law also recognizes a claim for common law abuse of process when a legal process is misused and "harm has been caused to the plaintiff" as a result. *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002).

The damages claimed under Plaintiffs' interference with contractual relations and abuse of process claims are based on the premise that Mirarchi was deprived of its fee in the Nationwide litigation. As noted above, this argument is precluded by the final resolution of the Mirarchi motion. Thus, regardless of whether Plaintiffs could support the other elements of their contract interference or abuse of process claims, Mirarchi is precluded from asserting the damages allegedly arising from those claims, and thus Defendants' motions to dismiss those claims shall be granted.

### c. Broader Unjust Enrichment Claim

To escape the preclusive effect of the final order denying the Mirarchi motion, Plaintiffs argue that their unjust enrichment claims in this case seek not only to recover the Nationwide contingency fee itself, but also to remedy a broader inequity created by allowing Defendants to benefit from the Nationwide settlement without compensating Plaintiffs. To this end, Plaintiffs unjust enrichment claims seek damages other than the Nationwide contingency fee.

This argument cannot relieve Mirarchi from the preclusive effects of the Court's decision on the Mirarchi motion. To succeed on an unjust enrichment claim, a plaintiff must show, *inter alia*, "'that it would be inequitable for defendant to retain the benefit without payment of value.'" *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Limbach Co. LLC v. City of Phila.*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)). The alleged inequity in this case is precisely the same inequity that was alleged in the Mirarchi motion – failure to pay Mirarchi for its work on the Nationwide case – which the Court rejected as a matter of law. *See U.S. Trustee v. Thorpe*, 2017 WL 3084388, at *5. Mirarchi is thus precluded from asserting the very same "inequity" in this case. In other words, even if the scope of Plaintiffs' unjust enrichment claims in this case expand outside the same "cause of action" that was raised in the Mirarchi motion for claim preclusion purposes, the claims rely upon the same alleged inequity that was rejected by the Court and therefore cannot survive the issue-preclusive effects of the final order denying the Mirarchi motion. Defendants' motion to dismiss Count III in its entirety shall be granted.

### 2. Silver Legal Services' Claims

Since Silver Legal Services was not a party to the Mirarchi motion, it is not bound by the preclusive effects of the final order denying that motion. Its claims fail, however, for a

straightforward reason: The Complaint does not contain a plausible factual basis for any of the claims by Silver Legal Services, nor are there any specific factual allegations explaining how Silver Legal Services was damaged by Defendants' conduct. Silver Legal Services was not a party to the Fee Agreement, nor do Plaintiffs argue that the Thorpes retained Silver as their lawyer at any time. There is no allegation of a promise by the Thorpes to pay Silver or his firm, nor any allegations of misrepresentation made by the Thorpes to Silver. There are also no facts suggesting that Silver has a property interest in the Nationwide contingency fee, nor any allegations that he was improperly excluded from the bankruptcy proceedings. In fact, beyond alleging that Gary Silver aided in Mirarchi's unsuccessful attempt to gain the Thorpes' consent for the Nationwide settlement and some conclusory assertions of damage to "Plaintiffs," the Complaint fails to explain Silver Legal Services' connection to this case at all – much less a plausible basis for concluding that failing to compensate the firm for the Nationwide settlement would be inequitable. Defendants' motions to dismiss all of the claims asserted by Silver Legal Services shall be granted.

### 3. Dismissal With Prejudice

Plaintiffs have requested leave to amend their Complaint if the Court grants Defendants' motions to dismiss. When considering requests to amend a complaint following dismissal of claims, the Third Circuit has "instructed that if a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

In this case, amendment to the Complaint would be both futile and inequitable. A prior final judgment has foreclosed Mirarchi's legal and equitable rights to a contingency fee from the Nationwide litigation, so further amendment in pursuit of that fee – either directly or indirectly –

would be futile.  And the 365-paragaph, 61-page Complaint is devoid of any facts suggesting a viable legal claim by Silver Legal Services against any Defendant.  Given the apparent futility of Plaintiffs' legal claims, it would be inequitable to subject Defendants to another round of pleading and motion practice regarding an attorney fee dispute that has already been fully litigated and decided.  Plaintiffs' claims shall be dismissed with prejudice, and no amendment to the Complaint shall be permitted.[7]

An order follows.

**Dated:  August 29, 2017**

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

---

[7] Defendant Fiorillo has filed a motion seeking sanctions against Plaintiffs under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, arguing that the Complaint was a bad-faith effort to multiply legal proceedings, and contained legally frivolous claims that violated Rule 11's requirement to use reasonable efforts to ensure that all legal arguments are supported by valid authority.  Although many of Plaintiffs' legal arguments in this case are poorly supported, the core dispute – the entitlement to the Nationwide contingency fee – was unresolved at the time this case was filed.  Given that this case was a live legal dispute when it was originally filed, the Court finds that sanctions are not warranted based on the Complaint alone and Fiorillo's motion shall be denied.  Plaintiffs are reminded, however, of the need to comply scrupulously with the requirements of Rule 11.